AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>HORVIN MCKENZIE JR. and<br>DAVID JONATHAN VENTURA,<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  21-MJ-6264-VALLE<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 6, 2021, to April 23, 2021,__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1114 and 2 | Attempted Murder of Person Assisting DEA Agents in Performance of Their Duties |
| 21 U.S.C. § 846 | Conspiracy to Distribute 500 Grams or More of Cocaine |
| 21 U.S.C. § 841(a)(1) and 2 | Possession with Intent to Distribute 500 Grams or More of Cocaine |
| 18 U.S.C. § 924(c)(1)(A) and 2 | Possession of a Firearm During and In Furtherance of Drug Trafficking Crime |

This criminal complaint is based on these facts:

See attached Affidavit.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Crystal Connors, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence in accordance to
the requirements of Fed. R. Crim. P. 4.1 by __FACETIME__.

Date: __April 24, 2021__

_____
*Judge's signature*

City and state: __Fort Lauderdale, Florida__    Alicia O. Valle, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Crystal Connors, having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Drug Enforcement Administration ("DEA") assigned to the Miami Field Division. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent since November 2012. In January 2013, I was assigned to the DEA Miami Field Division. I have received specialized training in the means and methods used by narcotics traffickers to import and distribute narcotics, drug smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have personally conducted and participated in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these investigations, I have participated in search warrant executions and have debriefed or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. The aforementioned investigations resulted in the arrest and prosecution of numerous individuals for narcotics violations and other violations under Titles 18 and 21 of the United States Code. Based upon my training and experience, I am familiar with the manner in which narcotics-trafficking organizations operate, including the manner in which various types of illegal drugs are cultivated, manufactured, smuggled, distributed, or diverted, as well as methods used to finance drug transactions and launder drug proceeds.

2.	I make this Affidavit in support of a criminal complaint charging **Horvin McKenzie Jr.** and **David Jonathan Ventura** with a violation of Title 18, United States Code, Sections 1114 and 2 (attempted murder of a person assisting agents of the Drug Enforcement Administration during the performance of their official duties); Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance); Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 (possession with intent to distribute a controlled substance); and Title 18, United States Code, Sections 924(c)(1)(A) and 2 (possession of a firearm during a crime of violence).

3.	This Affidavit is based upon my personal knowledge of the events set forth herein, as well as information provided to me by other law enforcement personnel and other sources of information. Because this Affidavit is being submitted for the limited purpose of securing a warrant, I have not included every fact known to me or other law enforcement personnel concerning this investigation but have set forth only those facts necessary to establish probable cause.

## PROBABLE CAUSE

### Early April 2021

4.	In or around April 2021, a confidential source ("CS1") began communicating with Horvin McKenzie Jr. ("McKenzie") regarding a load of cocaine that McKenzie expected to receive in South Florida. McKenzie advised CS1 that he could provide CS1 with multi-kilogram quantities of cocaine. On April 6, 2021, CS1 and a second confidential source ("CS2") conducted a recorded meeting with McKenzie in Coral Springs, Florida, at the direction of law enforcement. During this meeting, McKenzie advised that he did not have the cocaine but propositioned CS2 regarding a scheme to transport approximately one hundred eighty (180) kilograms of cocaine from the Dominican Republic to South Florida.

5. On or about April 18, 2021, McKenzie contacted CS2 via phone and advised that he could provide CS2 with three (3) kilograms of cocaine at thirty two thousand dollars ($32,000.00) per kilogram, or ninety six thousand dollars ($96,000.00) total. McKenzie and CS2 agreed to conduct the transaction later that week.

<u>April 22, 2021</u>

6. On this date, McKenzie and CS2 communicated telephonically. During this conversation, they agreed to meet the next day to facilitate the drug transaction.

<u>April 23, 2021</u>

7. In the early morning, McKenzie and CS2 communicated telephonically. During this communication, they agreed to meet at the Bass Pro Shops, located in Dania Beach, Florida, later that afternoon to conduct the transaction. McKenzie advised that his associate would bring the cocaine to the meeting. McKenzie stated that, because his associate did not have more than two (2) kilograms of cocaine at the time, McKenzie could only sell that amount to CS2. CS2 accepted the arrangement and agreed to bring sixty four thousand dollars ($64,000.00) to facilitate the two-kilogram transaction.

8. At approximately 10:30 am, a DEA Task Force Officer ("TFO") established surveillance on McKenzie's residence in Coral Springs, Florida. While conducting surveillance, the TFO observed McKenzie meeting with the driver of a gold Toyota Corolla, later identified as David Jonathan Ventura. At approximately 11:15 am, the TFO observed McKenzie enter the driver seat of a white Nissan Sentra. He and Ventura then left the area in their respective vehicles in tandem. The TFO could not effectively maintain surveillance of the vehicles without compromising his presence, thereby resulting in the termination of the surveillance.

9.      At approximately 12:00 pm, while conducting surveillance, a different DEA TFO observed the white Nissan and gold Toyota parked next to each other in the parking lot of the Bass Pro Shops, located in Dania Beach, Florida. Both vehicles were present at the Bass Pro Shops at the time of the TFO's arrival in the area.

10.     Around noon, DEA Special Agents, DEA TFOs, and other law enforcement officers briefed regarding the federal drug operation. The objective was to arrest McKenzie and any associates while they were in possession of multiple kilograms of cocaine. At this time, CS2 met with law enforcement where officers equipped CS2 with a covert audio recording device.

11.     A short time later, CS2 arrived at the Bass Pro Shops and parked his/her vehicle. CS2 then directed McKenzie to his/her location in the lot. McKenzie drove the white Nissan to CS2's location and met with CS2. During this meeting, CS2 requested to see the cocaine and McKenzie then made a phone call. Law enforcement then observed the gold Toyota drive towards CS2 and McKenzie before parking next to the white Nissan. At this time, CS2 met with McKenzie at the rear of the gold Toyota. McKenzie then directed CS2's attention to a bag containing approximately two (2) kilograms of cocaine located in the backseat of the gold Toyota. Ventura remained in the driver's seat of the gold Toyota during the meeting. CS2 advised McKenzie that he would return shortly with the money. McKenzie then entered the Nissan to wait for CS2. CS2 reentered his/her vehicle and drove away from the area. At this time, CS2 advised law enforcement that he had seen the cocaine.

12.     Upon receiving notification from CS2, law enforcement moved in to effectuate the arrest. The federal and state law enforcement officers who converged on McKenzie and Ventura wore protective vests clearly identifying themselves as law enforcement officers and activated the emergency lights on their vehicles. As law enforcement approached the gold Toyota, Ventura

produced a firearm and began firing the weapon from inside the vehicle at the approaching law enforcement officers. One of the rounds that Ventura fired struck a detective in the arm while another struck the detective's bullet-proof vest. Law enforcement returned fire, striking Ventura. Law enforcement then took both Ventura and McKenzie into custody.

13. Law enforcement obtained and executed state search warrants for McKenzie's Nissan and Ventura's Toyota. A search of the Toyota revealed a bag containing approximately two (2) kilograms of a substance that field-tested positive for the presence of cocaine in the trunk of the vehicle. Law enforcement also seized a Beretta, 9mm handgun from the interior of the vehicle. This was the only firearm in the Toyota and thus, it is believed to be the firearm that Ventura fired at law enforcement. A search of McKenzie's Nissan revealed a loaded Glock, .40 caliber handgun.

14. Law enforcement advised McKenzie of his <u>Miranda</u> rights, which he waived. During a post-<u>Miranda</u> interview, McKenzie admitted to brokering the transaction between CS2 and Ventura. McKenzie stated that he was going to profit one thousand dollars ($1,000.00) from the transaction. He admitted to bringing the Glock found within his vehicle to the deal, adding that he had a permit for the firearm.

[INTENTIONALLY LEFT BLANK]

## CONCLUSION

Based on the information contained in this Affidavit, I respectfully submit that there is probable cause to believe that Horvin McKenzie Jr. and David Jonathan Ventura violated Title 18, United States Code, Sections 1114 and 2 (attempted murder of a person assisting agents of the Drug Enforcement Administration during the performance of their official duties); Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance); Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 (possession with intent to distribute a controlled substance); and Title 18, United States Code, Sections 924(c)(1)(A) and 2 (possession of a firearm during a crime of violence).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_____
CRYSTAL CONNORS, SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Attested to by the applicant and in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime on this __24th__ day of April, 2021.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

6